UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT PEARSON,

*Plaintiff*,

v.

WELLPATH HEALTH SERVICES, *et al.*,

*Defendants*.

No. 24-CV-1657 (KMK)

OPINION & ORDER

Appearances:

Robert Pearson
Alden, NY
*Pro se Plaintiff*

Paul A. Sanders, Esq.
Barclay Damon LLP
Rochester, NY
*Counsel for Defendants Wellpath Health Services and Chrystal Rubang*

Stephanie T. Midler, Esq.
Orange County Department of Law
Goshen, NY
*Counsel for Defendants Orange County, Dillon Powles, Vincent Murphy, Michael Shaffer, and Mark Berlinski*

KENNETH M. KARAS, United States District Judge:

Robert Pearson ("Plaintiff"), pro se, brings this Action against Wellpath Health Services ("Wellpath") and Chrystal Rubang ("Rubang") (together, "Wellpath Defendants"), and Orange County (the "County"), Dillion Powles ("Powles"), Vincent Murphy ("Murphy"), Michael Shaffer ("Shaffer"), and Mark Berlinski ("Berlinski") (together, "County Defendants"), asserting claims under 42 U.S.C. § 1983 for violations of his constitutional rights while in pretrial detention at Orange County Jail ("OCJ"). Before the Court are the Wellpath Defendants' and the

County Defendants' Motions to Dismiss (the "Motions"). Because the Complaint states a plausible claim that the "dry cell" protocol on which Plaintiff was placed amounted to an unconstitutionally punitive condition of his confinement, the Court denies the County Defendants' Motion as to that claim as against Powles, Murphy, Shaffer, and Berlinski. The Court otherwise grants both Motions.

## I. Background

### A. Factual Background

The following facts are drawn from the Complaint and assumed true for the purposes of the Motions. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Plaintiff was booked at the Orange County Jail ("OCJ") as a pretrial detainee on January 25, 2024. (*See* Compl. 4 (Dkt. No. 1).)[1] During his booking, Plaintiff claims he "had words" with OCJ correctional officers after they refused to allow him to make a phone call during his booking or provide him "any paperwork on why [he] was in the jail." (*Id.* at 7.) A mental health services employee, Rubang, who "work[ed] for Wellpath" approached Plaintiff while he was still in a holding cell to speak with him; he told her he "did not need her help." (*Id.* at 4.) Shortly after, officers took Plaintiff to his cell at OCJ and "took all [his clothes], everything," informing Plaintiff that Rubang "had order[ed] for [Plaintiff] to be put on a 1-on-1 mental health watch," which the Court understands from the Complaint to mean a suicide watch. (*Id.*) The officers told Plaintiff he was placed on the "1-on-1" "because of something [he] did in 2021," though

[1] Any citations to the Complaint are to the page number of the electronic file at Dkt. No. 1, and not necessarily to the number at the bottom of any page.

Plaintiff later alleges that he should not have been placed on the one-on-one watch because he "did not say at any time that [he] was going to hurt [him]self or others." (*Id.* at 4, 6–7.)[2]

Plaintiff was also informed he was being placed on "a dry cell order," pursuant to which OCJ "turned off [his] water" to his cell. (*Id.* at 4–5.)[3] Plaintiff alleges that while he was told he was placed on a dry cell protocol because he "did not want to go through a . . . body scanner to be search[ed] for contraband," that proffered reason was "a lie"—officers "never told [him] to go through any body scanner." (*Id.* at 6.) Plaintiff regularly asked "mental health workers" who came by his cell to check on him "to take [him] off the mental health 1-on-1 watch," but they did not. (*Id.* at 5.) Plaintiff also asked to visit OCJ's medical unit, claiming he was experiencing chest pain. (*Id.* at 6.) Mental health workers told Plaintiff that if he stopped asking to go to the medical unit, and that if "the C.O.s g[a]ve them a good report on [Plaintiff]," he would be "take[n] off the mental health" watch. (*Id.*)

Plaintiff was ultimately taken off both the one-on-one mental health watch and the dry cell order "a day before[e] [he] went back to court," presumably, for an appearance in the then-pending criminal matter for which he was detained pretrial. (*Id.*) Plaintiff alleges that "the reason for the C.O.s putting [him] on a dry cell order is . . . to get back at [him] because they felt [he] was giv[i]ng them problems," and he also claims there "should not [have] been a reason for

[2] As explained in Part II(B)(2)(a), the event to which Plaintiff likely refers is a prior suicide attempt while in custody. (*See* Compl. 10.)

[3] The County Defendants explain that a dry cell order is "a temporary restriction on running water within an inmate's cell such that it allows the officers to inspect the contents of any excrement for contraband," but it "is not a complete restriction as the inmates are allowed access to water periodically under close watch supervision." (County Mem. 4 n.3.) This procedure "is not unusual." *Porter v. Bunch*, No. 16-CV-5935, 2019 WL 1428431, at *16 (S.D.N.Y. Mar. 29, 2019) (collecting cases).

. . . the mental health worker to put [him] on a 1-on-1." (*Id.* at 8.) In total, the conditions were imposed "for about 4 or 5 days." (*Id.*)

B. Procedural Background

Plaintiff brought this Action on February 29, 2024. (*See* Compl.)[4] On June 21, 2024, the Court dismissed Plaintiff's claims against Orange County Jail and added Orange County as a defendant. (*See* Order (Dkt. No. 10).) The Court also directed service on Wellpath and Orange County, directed the Orange County Attorney to ascertain the identities and service addresses of the unnamed defendants so they can be served, and ordered Plaintiff to file an amended complaint incorporating that information once he received it. (*Id.* at 4–6.) On July 31, 2024, the Orange County Attorney filed a letter identifying Rubang as the nurse to whom Plaintiff referred as "Crystal," and identifying Correctional Officer Dillion Powles, Sergeant Vincent Murphy, Lieutenant Michael Shaffer, and Captain Mark Berlinski as "the names of the officers involved in ordering the dry cell." (*See* Letter from Stephanie T. Midler to Court (July 31, 2024) (Dkt. No. 14).) Plaintiff failed to amend his Complaint to add the previously unnamed Defendants as the Court had ordered him to do, (*see generally* Dkt.), but because all the defendants were readily identified in the Orange County Attorney's letter, the Court ordered those defendants

[4] The Court notes that the attachments to the Complaint indicate Plaintiff filed a grievance concerning the events of the Complaint sometime in early February 2024. (*See* Compl. 10, 11 (attaching decisions from OCJ's Grievance Coordinator dated February 8, 2024).) *See* 9 N.Y.C.R.R. § 7032.4 (New York regulations requiring grievance coordinators to issue written determinations within five days of their receipt of a grievance). The Court explained in a related case, also against the County, that the Prison Litigation Reform Act ("PLRA") requires Plaintiff to appeal the denial of his grievances before suing in federal court, and it was implausible Plaintiff had done so on a similarly short timeframe. *Pearson v. Cappelli*, No. 24-CV-8254, 2026 WL 851351, at *3–4 (S.D.N.Y. Mar. 26, 2026). Because neither the County Defendants nor the Wellpath Defendants make the same argument here, the Court does not consider PLRA exhaustion in its analysis of the Motions to Dismiss.

added to the case and ordered the Complaint served on them, (*see* Order of Service (Dkt. No. 48)). The Wellpath Defendants moved to dismiss on September 15, 2025. (*See* Notice of Mot. to Dismiss (Dkt. No. 71); Mem. in Supp. re: Defs.' Mot. to Dismiss ("Wellpath Mem.") (Dkt. No. 71-2).) The County Defendants moved to dismiss the same day. (*See* Mot. to Dismiss (Dkt. No. 72); Mem. in Supp. of County Defs.' Mot. to Dismiss ("County Mem.") (Dkt. No. 74).) Plaintiff did not respond by the deadline set in the Court's briefing schedule, which was mailed to Plaintiff, (*see* Memo Endorsement (Dkt. No. 70)), and has not yet responded in opposition to either Motion. The Court accordingly deemed the Motions fully submitted on July 8, 2026. (*See* Memo Endorsement (Dkt. No. 88).)[5]

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

---

[5] Plaintiff filed a letter postmarked July 11, 2026, explaining that he did not have writing implements in the preceding 30 days, and "asking for more time on every order that was made on [his] cases." (*See* Letter from Pl. to Court (July 17, 2026) (Dkt. No. 89).) Because that does not explain his failure to oppose Defendants' Motions in the eight months preceding those 30 days, the Court declines to reopen briefing on these Motions after having already deemed them fully submitted. (*See* Memo Endorsement (Dkt. No. 88) (deeming the Motions fully submitted).) *See, e.g.*, *Hopkins v. Seabrook*, No. 14-CV-600, 2015 WL 685220, at *1 (S.D.N.Y. Feb. 18, 2015) (treating motion as fully submitted and proceeding to resolve it where the plaintiff had failed to timely file an opposition); *Ramrattan v. Brown*, No. 12-CV-7818, 2014 WL 2604031, at *2 (S.D.N.Y. June 9, 2014) (same).

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012))). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters judicial notice can be taken of in ascertaining facts for a motion to dismiss). Additional documents a court may consider at this stage include those "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe his submissions "liberally and interpret [them] to raise the strongest arguments that [they] suggest[]." *Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y. Sept. 23, 2024) (alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same). Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Dumel v. Westchester County,* No. 19-CV-2161, 2021 WL 738365, at *4 (S.D.N.Y. Feb. 25, 2021); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B. Analysis

Plaintiff's allegations chiefly focus on two alleged injuries—his placement on a dry cell protocol, and his placement on suicide monitoring. (*See* Compl. 4–8.)[6] Because he has claimed it was "the mental health worker [who] . . . put [him] on a 1-on-1," (*id.* at 8), and that it was "[t]he C.O.s [who] put[] [him] on a dry cell order," (*id.*), the Court considers the suicide watch allegations to pertain to the Wellpath Defendants, and the balance of Plaintiff's allegations to pertain to the County Defendants.

1. County Defendants' Motion

a. Claims against the County

Plaintiff originally named the Orange County Jail as a defendant in his Complaint. (*See* Compl. 3.) But because "Orange County Jail is not a 'person' within the meaning of Section 1983" and cannot be sued thereunder, the Court "dismisse[d] Plaintiff's claims against the Orange County Jail" and substituted Orange County, which *can* be sued under § 1983. (Order of Service 3.)

"A municipality or other local government," like Orange County, "may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011)

---

[6] Plaintiff also alleges a deprivation of his clothing, but says no more than that he was "in a cell . . . without anything[,] [no] clothes [no] anything." (Compl. 8.) The Court understands this to be in connection with his suicide watch, because this is a common condition of suicide watches in jails and prisons. *See Williams v. Gumbula*, No. 13-CV-1132, 2018 WL 1801201, at *11 (W.D.N.Y. Mar. 5, 2018) (noting deprivations of clothes during suicide watches, because clothing could be used to inflict self-harm), *report and recommendation adopted*, 2018 WL 1795547 (W.D.N.Y. Apr. 16, 2018); *Houston v. Cotter*, 7 F. Supp. 3d 283, 287 (E.D.N.Y. 2014) (same, noting inmates are typically provisioned a "suicide-safe garment" in such cases); *Perez v. County of Westchester*, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000) (same).

(citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citing *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)). The point of *Monell*'s strictures is to ensure municipalities are held accountable for their particular failures, rather than those of individual officers. *See Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992) (noting that a municipality "may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees").

First, Plaintiff must plausibly allege the existence of a municipal policy or custom relevant to his case. "A 'policy' or 'custom' can be demonstrated in a variety of ways." *Rodriguez v. City of New York*, 607 F. Supp. 3d 285, 292 (E.D.N.Y. 2022) (citing *Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021)). These include:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

The Court dismisses Plaintiff's claim against the County because it does not allege the County or OCJ violated his rights while acting pursuant to some policy or custom. The Complaint points only to the actions of individual correctional officers in ordering the dry cell—Plaintiff has not claimed his placement on a dry cell protocol occurred pursuant to a policy or systemic training or supervision failure on *the County*'s or *OCJ*'s part. (*See* Compl. 4–8.) Nor

has Plaintiff alleged any incidents like his at OCJ that could be evidence of a policy or custom. (*See id.*) That is reason enough to dismiss the claim against the County. *See, e.g.*, *Rodriguez v. City of New York*, No. 20-CV-11045, 2023 WL 3001870, at *2 (S.D.N.Y. Apr. 19, 2023) (dismissing § 1983 claim against city where the plaintiff "offer[ed] no allegations regarding the existence of a New York City municipal policy or custom that caused the constitutional injury alleged"); *Maloney v. County of Nassau*, 623 F. Supp. 2d 277, 289 (E.D.N.Y. Sept. 25, 2007) (dismissing § 1983 claim against county where complaint did "not allege facts which suggest the existence of a municipal policy or custom" and "[a]t most, . . . describe[d] a single incident in which municipal employees allegedly violated [the] plaintiff's Constitutional rights").

To the extent there is any policy relevant to dry cells that could have been alleged here, an attachment to the Complaint indicates there is a policy of placing OCJ detainees on dry cell protocols when they turn down body scans upon booking. (*See* Compl. 9 (report from grievance coordinator that "[u]pon entering [OCJ], every incarcerated individual is required to be scanned through the OD SOTER RS Body Scanner to search for contraband" and OCJ's "policy" is "to place [detainees] on dry cell protocol when [they] refuse to comply with the scanning").) Plaintiff alleges, however, that the OCJ officers did *not* follow this policy—rather, he claims they lied that Plaintiff refused a body scan, and placed him on a dry cell protocol "to get back at [him] because they felt [he] was giving them problems." (Compl. 6, 8.) Plaintiff is therefore alleging "not that [County] policies were improper, but that [County] personnel failed to follow those policies"; therefore, "any [purported] violation of Plaintiff's constitutional rights was caused by the *failure* to follow a policy, not the policy itself." *Thomas v. DuBois*, No. 19-CV-7533, 2020 WL 2092426, at *4 (S.D.N.Y. Apr. 30, 2020) (citations omitted); *see also Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 632 (E.D.N.Y. 2011) (finding a plaintiff's

claim was "in direct violation of *Monell*" where the "plaintiff's argument [wa]s not that [the] defendants acted pursuant to an official discriminatory policy . . . [, but r]ather . . . that [a defendant] failed to act in accordance with [the] policy"). Because failure to follow a policy fails to state a *Monell* claim "[b]y definition," *Thomas*, 2020 WL 2092426, at *4 (collecting cases), this dry cell policy would not be an appropriate basis for a *Monell* claim.

Accordingly, Plaintiff's claim against the County is dismissed.

b. Claims against Powles, Murphy, Shaffer, and Berlinski

Plaintiff claims that certain correctional officers, whom the County has identified as Powles, Murphy, Shaffer, and Berlinski, ordered him to be placed on a dry cell protocol. (*See* Compl. 4–8; County Mem. 7 ("[T]he individually named County Defendants . . . signed off on ordering the dry cell in this case."). The County Defendants have interpreted Plaintiff's claims in three ways: as a retaliation claim; as a disciplinary due process claim; and as a conditions of confinement claim. (*See generally* County Mem.) The Court agrees with this interpretation of Plaintiff's claims.

i. Retaliation

Construed liberally, the Court can interpret the Complaint as alleging Plaintiff was placed on a dry cell protocol because he "had words" with the above-named correctional officers, and accordingly, that Plaintiff is attempting to bring a First Amendment retaliation claim—*i.e.*, that the officers retaliated against him for engaging in protected speech towards them. (*See* Compl. 7–8; County Mem. 7 (so construing the Complaint).)

A plaintiff asserting a First Amendment retaliation claim must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."

*Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks omitted). "The Second Circuit has instructed district courts to view 'prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official[—]even those otherwise not rising to the level of a constitutional violation[—]can be characterized as a constitutionally proscribed retaliatory act.'" *Baltas v. Snyder*, No. 24-CV-1487, 2025 WL 509423, at *4 (D. Conn. Feb. 14, 2025) (quoting *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015)). Accordingly, First Amendment retaliation claims brought by prisoners must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotation marks omitted).

Here, as to the first element, the only potentially protected speech Plaintiff could point to is his exchange with corrections officers during his booking, where he asked to make a phone call and requested paperwork explaining why he was at OCJ, and both requests were denied. (Compl. 7.) But Plaintiff describes his interactions with the corrections officers in terms that are too vague to sustain his claim—he says only that he "had problems with the C.O.s" and that he "had words" with them, and that there were "problems in booking." (*Id.*) Plaintiff does not clarify what form these "problems" took, what "words" were "had," whether those "problems" preceded the "words," how his complaints were raised, or any further detail. (*Id.*) Courts will find the first element met when there is some clear allegation as to the protected conduct—for example, where a plaintiff has alleged they "fil[ed] a lawsuit, an administrative complaint, or a prison grievance," *Baltas*, 2025 WL 509423, at *5, or refused to respond to questions in an investigation, *see Delgado v. Annucci*, No. 20-CV-6228, 2021 WL 9276245, at *9 (W.D.N.Y. Feb. 1, 2021). But "not every statement an inmate makes in prison is afforded First Amendment protection," and although there "is authority in the Second Circuit for the proposition that verbal

complaints can be protected action, . . . courts in the Second Circuit and others have distinguished between unambiguously protected activity and situations where an inmate verbally confronts a prison official." *See McIntosh v. United States*, No. 14-CV-7889, 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (collecting cases); *id.* at *27 (recognizing a "distinction to be made between the inmate who stridently challenges a prison official's authority in the moment and his peer who instead brings his complaints through the designated channels, such as the prison's grievance procedure, where feasible").

Because Plaintiff has not offered enough detail as to what he said and did to the officers for the Court to determine on what "side of the line," *id.*, his statements fell, the Court cannot discern if there was protected speech, so Plaintiff has not stated a First Amendment retaliation claim. *Shand v. Parsons*, No. 20-CV-28, 2020 WL 1989151, at *7 (D. Conn. Apr. 7, 2020) (dismissing First Amendment retaliation claim where plaintiff had alleged a false report was filed to "retaliate against him for the many past 'issues' between" him and correctional officers, but did not "provide[] any allegations suggesting that he engaged in protected speech or activity" and did "not elaborate[] upon" those "issues"); *see also Ibbison v. Quiros*, No. 22-CV-1163, 2023 WL 1766440, at *16 (D. Conn. Feb. 3, 2023) (finding prisoner "failed to allege that he engaged in protected speech," including where he had failed to "allege that he made any written or oral complaints . . . that precipitated [the defendant's] purported retaliation").

ii. Punitive conditions of confinement

In the alternative, Plaintiff may be alleging that the dry cell protocol was an unconstitutionally punitive condition of his confinement, imposed as a punishment for his interactions with the corrections officers.[7]

"A [pretrial detainee] . . . can establish a due process claim for inhumane conditions of confinement by proving that the challenged conditions are punitive." *Mercado v. Noem*, 800 F. Supp. 3d 526, 575 (S.D.N.Y. 2025); *see also Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (explaining that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law" (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). "[I]n assessing whether restrictions on pretrial detainees comport with substantive due process, a court must decide whether the restriction is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Washington v. Falco*, No. 20-CV-3009, 2021 WL 797658, at *4 (S.D.N.Y. Mar. 1, 2021) (quoting *Allah*, 876 F.3d at 55) (quotation marks omitted).

"[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Bell*, 441 U.S. at 539; *Mercado*, 800 F. Supp. 3d at 575 (same). In determining whether a

[7] The County Defendants argue, somewhat related to this reading of the Complaint, that Plaintiff does not state a disciplinary due process claim. (*See* County Mem. 9.) The Court agrees, largely because that framework is not on all fours with Plaintiff's allegations. "[T]o present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (internal quotation marks omitted). Here, Plaintiff has not alleged the dry cell implicated a liberty interest, and he has not alleged anything about the process that resulted in it. (*See generally* Compl.)

restriction is a punishment, courts accord prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Dixon v. Zenk*, No. 05-CV-3127, 2008 WL 2437841, at *4 (E.D.N.Y. June 16, 2008) (quoting *Bell*, 441 U.S. at 521); *see also Sander v. City of Mount Vernon*, No. 23-CV-6204, 2026 WL 1122401, at *10 (S.D.N.Y. Apr. 24, 2026) ("The government has a legitimate interest in the security of jails and prisons, including the health and safety of all individuals in their custody."). "In this analysis, courts consider whether the conditions are employed to achieve objectives that could be accomplished via 'alternative and less harsh methods,'" considering "'constitutional requirements,' rather than the 'court's idea of how best to operate a detention facility.'" *Mercado*, 800 F. Supp. 3d at 575 (quoting *Bell*, 441 U.S. at 539).

Interpreting Plaintiff's allegations liberally, the Complaint makes out a plausible claim that Plaintiff was subjected to a punitive condition, his dry cell order, without a legitimate governmental objective. The facts alleged in the Complaint suggest there was no reason for Plaintiff to have been placed on this restriction because the one reason offered—that Plaintiff had refused to submit to a body scan—was a "lie," and that at no point did he refuse a scan. (Compl. 6, 8.) Likewise, the only legitimate penal interest in a dry cell order the County Defendants offered in their memorandum is to find contraband if an inmate does not agree to submit to a body scan. (*See* County Mem. 6–7.) Some legitimate justification is required to place an inmate in a dry cell. *See, e.g.*, *Thomas v. Tice*, 948 F.3d 133, (3d Cir. 2020) (explaining that while that court had "never determined the exact quantum or nature of penological interest that is needed to justify confinement in a dry cell," the court was "satisfied that there must be at least *some* interest" in doing so); *Porter*, 2019 WL 1428431, at *16 (finding "contraband searches" to

present a "legitimate penal objective" for shutting off running water to a cell). But Plaintiff claims it is a "lie" that a scan was offered to him, so he has adequately alleged there was no legitimate governmental purpose in subjecting him to a dry cell order, and the Court must accept that allegation as true at this stage.[8] Accordingly, Plaintiff has alleged his condition or restriction was not related to a legitimate penal objective because there was no reason for its imposition beyond "problems" he may have had with the named officers and the ordinary justifications for a dry cell did not apply, so the restriction could have run afoul of the Eighth and Fourteenth Amendments. *Bell*, 441 U.S. at 538–39; *see Hart v. Artus*, No. 16-CV-6808, 2021 WL 3022293, at *15 (W.D.N.Y. July 16, 2021) (explaining that "the Eighth Amendment is violated by conditions that are totally without penological justification"); *Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 665 (S.D.N.Y. 2000) ("The Supreme Court has . . . determined that, with respect to substantive due process violations under the Fourteenth Amendment, for a condition or restriction imposed by prison officials during pretrial detention to be actionable, the plaintiff must demonstrate that the action 'is not reasonably related to a legitimate goal,' but is imposed as a mere punishment." (citing *Bell*, 441 U.S. at 539)).

---

[8] Defendants note an attachment to the Complaint—a response to a grievance he filed—indicates Plaintiff was placed on a dry cell protocol because he refused to submit to a body scan. (*See* County Mem. 6; Compl. 9.) True, courts may consider attachments to a complaint on a motion to dismiss, *see Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002), and generally may look to those attachments for the truth of what they contain, *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 n.3 (2d Cir. 2022). But where, as here, a plaintiff *contests* the accuracy of those attachments in the complaint itself, (*see* Compl. 8 (alleging the explanation offered for Plaintiff's dry cell is a "lie")), the Court must accept what is alleged in the Complaint at the motion to dismiss stage, *see Yousef v. County of Westchester*, No. 19-CV-1737, 2020 WL 2037177, at *7 n.9 (S.D.N.Y. Apr. 28, 2019) (citing *Colon v. City of Rochester*, 419 F. Supp. 3d 586, 594–95 (W.D.N.Y. 2019)). Defendants are free to make this argument anew at summary judgment or at trial.

Finally, Defendants argue Plaintiff has not adequately alleged the personal involvement of the four named officers. (*See* County Mem. 6–7.) But as explained above, the Court must construe Plaintiff's Complaint liberally, including as to the officers' personal involvement. *See, e.g.*, *Tolliver v. Skinner*, No. 12-CV-971, 2015 WL 5660440, at *4 (S.D.N.Y. Sept. 25, 2015) ("Given that pleadings drafted by *pro se* parties are to be liberally construed, [the p]laintiff has . . . alleged sufficiently [the d]efendants' personal involvement at this stage." (quotation marks and citation omitted)); *Davis v. Perdue*, No. 11-CV-1139, 2014 WL 582263, at *4 (N.D.N.Y. Feb. 13, 2014) ("Given [the plaintiff's] *pro se* status, and the liberal reading of his complaint to which he is entitled, at this juncture he has made sufficient allegations of personal involvement to withstand a motion to dismiss."). The allegations are thin, but they allow the inference that the same officers who ordered his dry cell protocol—the officers named herein—are the officers with whom he had "problems" upon his booking, particularly considering his placement on a dry cell immediately after those "problems." (*See* Compl. 8 (alleging that "the reason *for the C.O.s putting [Plaintiff] on a dry cell order* is because they did it to get back at [him] because *they* felt [he] was giving *them* problems" (emphasis added)).) And the County has identified the named officers herein as those who signed off on Plaintiff's dry cell. (*See* Letter from Stephanie T. Midler to Court (July 31, 2024).) At this stage, and in light of the liberal reading to which Plaintiff is entitled, that would show the officers' involvement in his conditions of confinement. *See Sierra v. Doe 22*, No. 22-CV-0711, 2024 WL 866866, at *6 (N.D.N.Y. Jan. 26, 2024) (finding "plausibl[e] alleg[ation] of [a defendant's] personal involvement in the alleged violation concerning [the p]laintiff's conditions of confinement" where the plaintiff had alleged that defendant "signed off on retaining" the plaintiff in those conditions), *report and recommendation adopted*, 2024 WL 865866 (N.D.N.Y. Feb. 28, 2024); *H'Shaka v. O'Gorman*, 444 F. Supp. 3d

355, 376 (N.D.N.Y. 2020) (finding sufficient showing of personal involvement at summary judgment stage where multiple individual defendants as a group were alleged to have been involved in decision to keep the plaintiff in segregated confinement).

Accordingly, the Court finds Plaintiff has stated a plausible claim that his placement on a dry cell protocol was an unconstitutionally punitive condition of his confinement.

iii. Deliberate indifference to conditions of confinement

Finally, the Complaint can be construed as asserting the County Defendants were indifferent to the conditions of confinement produced by Plaintiff's placement on a dry cell order, a "theor[y] of liability [that is] distinct" from the above theory about punitive conditions of confinement. *Mercado*, 800 F. Supp. 3d at 569. (*See* County Mem. 4.)

"A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Here, Plaintiff was a pretrial detainee during the time alleged. (*See* Compl. 2.) "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions," which requires "two prongs . . . an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong' . . . showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29.

"Under both the Eighth and Fourteenth Amendments, to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" *Id.* at 30; *see also Seymore v. Dep't of Corr*

*Servs.*, No. 11-CV-2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a conditions-of-confinement claim." (alteration adopted) (internal quotation marks and citation omitted)). "Thus, prison officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Collins*, 2018 WL 1626528, at *5 (internal quotation marks and citation omitted). Moreover, conditions of confinement may be aggregated to rise to the level of a constitutional violation, but "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (noting that "low cell temperature at night combined with a failure to issue blankets" may establish an Eighth Amendment violation). Under the "subjective" prong, "the pretrial detainee must [allege] that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant[] knew, or should have known, that the condition posed an effective risk to health or safety." *Darnell*, 849 F.3d at 35. "[A] challenge based on the inadvertent or negligent failure to provide adequate care does not raise a constitutional claim." *Slade v. Doe*, No. 23-CV-1419, 2023 WL 2479793, at *3 (S.D.N.Y. Mar. 13, 2023).

Plaintiff does not include enough detail in his Complaint for the Court to conclude whether the dry cell protocol in his cell meets the "objective prong," that is, whether it put Plaintiff at an "unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30. Courts have found a "dry cell" contributed to a valid conditions of confinement claim where some detail is offered on the conditions in the cell. *See, e.g.*, *Rahim v. Martin*, No. 23-CV-298,

2023 WL 4745536, at *1, *3 (D. Conn. July 25, 2023) (concluding "[the p]laintiff's allegations [had] suggest[ed] that the conditions in the dry cell were extremely harsh and unsanitary" where the plaintiff had alleged the cell, *inter alia*, "smelled of urine," "had a sticky floor and walls covered with fecal matter, food, muc[us], and insects," and he had complained about "the unsanitary conditions" in the cell). Courts have not held that a dry cell *always* presents an unreasonable risk of damage to a detainee's health or a deprivation of needs, and Plaintiff has not alleged that it did here—for example, there is no allegation that he was deprived of drinking water, showers on request, or that the toilet was not flushed when he so asked. *See, e.g.*, *Jones v. Garman*, No. 21-CV-1715, 2024 WL 4311476, at *6 (M.D. Pa. Sept. 26, 2024) (granting defendants summary judgment on conditions of confinement claim regarding incarceration in dry cell where defendants had presented evidence that the plaintiff "was consistently offered water for hydration" and "an opportunity to exercise," but "refused"); *Silber v. Pallito*, No. 09-CV-73, 2011 WL 1225594, at *10 (D. Vt. Feb. 7, 2011) (holding conditions of confinement claim about dry cell failed where the "facts . . . [we]re not as extreme as those found in controlling case law"), *report and recommendation adopted*, 2011 WL 1225588 (D. Vt. Mar. 31, 2011).

Accordingly, the Complaint does not state a claim against the County Defendants for deliberate indifference to unconstitutional conditions of confinement.

2. Wellpath Defendants' Motion

a. Claims against Rubang

Plaintiff alleges Rubang "put [him] on a 1-on-1 . . . because of something [he] did in 2021," and he remained that way for the duration of the events in the Complaint despite his requests to be taken off supervision. (Compl. 4, 8.) Wellpath Defendants move to dismiss

claims against Rubang, arguing Plaintiff did not state a claim against her for deliberate indifference to Plaintiff's medical needs. (*See generally* Wellpath Mem. 6.)

The Court agrees Plaintiff has not stated a deliberate indifference claim. "The Fourteenth Amendment protects pretrial detainees from 'deliberate indifference to serious medical needs.'" *Moore v. Broady*, No. 10-CV-3250, 2010 WL 3125008, at *6 (E.D.N.Y. Aug. 6, 2010) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), and *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). To state a claim of deliberate indifference to medical needs, Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that Defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017). "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted). In other words, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks and citation omitted). The objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), *overruled in part on other grounds by Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023), and "whether the inadequacy in medical care is sufficiently serious," which "requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *Salahuddin*, 467 F.3d at 280 (citation omitted). "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care."

*Spavone*, 719 F.3d at 138. "[M]ere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quotation marks omitted).

A grievance response attached to the Complaint indicates Plaintiff "enter[ed] [OCJ] after having a previous suicide attempt in custody," and that where OCJ booking officers have notice of such an event, they are "to submit a mental health referral immediately," and then, *inter alia*, "consult with Mental Health." (*See* Compl. 10.) Crucially, Plaintiff does not contest the truth of this anywhere in the Complaint or in response to the briefing. (*See generally* Compl.) "[D]istrict courts may 'permissibly consider documents other than the complaint' for the truth of their contents if they 'are attached to the complaint or incorporated in it by reference'" and are otherwise uncontested or not inconsistent with the complaint. *Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 352 n.3 (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see also Wang v. Sussman*, No. 24-CV-3987, 2025 WL 81355, at *4 (S.D.N.Y. Jan. 13, 2025) (same). Considering the prior suicide attempt, there is no plausible inference that Rubang was deliberately indifferent to Plaintiff's medical needs by placing him on a one-on-one mental health watch under the subjective or objective elements of this test. Moreover, the truth of Plaintiff's prior suicide attempt is not essential; what matters is that Rubang was confronted with a report of a prior suicide attempt in custody. *See, e.g.*, *Burke v. Warren Cnty. Sheriff's Dep't*, 890 F. Supp. 133, 138 (N.D.N.Y. 1995) (explaining "prison authorities incur a duty of due care to prevent a prison suicide when they know or should know that a prisoner is prone to suicide"); *cf. Hare v. City of Corinth*, 135 F.3d 320, 328–29 (5th Cir. 1998) (explaining that prison staff "must take measures to prevent inmate suicides once they know of the suicide risk"); *Waldrop v. Evans*, 871 F.2d 1030, 1036 (11th Cir. 1989) (affirming denial of defendant's motion for summary judgment where he "failed to notify [the prison psychiatrist] or take any other action"

despite "treat[ing] [the plaintiff] for a self-inflicted injury when he knew [the plaintiff] was suffering from severe psychiatric problems"). Indeed, courts have recognized deliberate indifference claims where jails and prisons, knowing a detainee had previously attempted suicide in custody, did *not* place an inmate on a suicide watch or take any action. *See, e.g.*, *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1025 n.1 (3d Cir. 1991) ("Custodians have been found to 'know' of a particular vulnerability to suicide when they have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities."); *Kelsey v. City of New York*, No. 03-CV-5978, 2006 WL 3725543, at *4 (E.D.N.Y. Dec. 18, 2006) ("In the detainee suicide context, deliberate indifference may exist . . . [when] the detaining authorities . . . discovered and have been aware of the [plaintiff's] suicidal tendencies, but [were] deliberately indifferent in the manner by which they respond to the recognized risk of suicide[.]") (citing *Rellergert v. Cape Girardeau County*, 924 F.2d 794, 796 (8th Cir. 1991)).

Even if the Court were to construe Plaintiff's claims as alleging the one-on-one watch was a deprivation of his liberty without due process, "Plaintiff cites to no authority (and the Court could not find any) holding that placement on suicide watch, by itself, violates a protected interest arising directly under the Due Process Clause." *Houston*, 7 F. Supp. 3d at 297; *see also Nwaokocha v. Sadwoski*, 369 F. Supp. 2d 362, 373–74 (E.D.N.Y. 2005) (holding where there existed "warning signs about the plaintiff's mental state" and prison officials "placed [the] plaintiff on suicide watch," *inter alia*, those "actions taken were indubitably designed to protect plaintiff against himself and to provide appropriate medical care" and did not violate the Constitution). And Plaintiff does not plead sufficient detail about what restrictions were placed

on him during the one-on-one watch for the Court to conclude it amounted to a deprivation of liberty in this case. (*See generally* Compl.)

Finally, Plaintiff's allegations that unnamed mental health workers did not treat him for chest pain do not state a deliberate indifference claim against Rubang. (*See* Compl. 5–6.) Plaintiff has not named those mental health workers as defendants, nor has he alleged Rubang had any involvement in their decision not to treat him. *See Fleurizard v. City of New Haven*, No. 16-CV-1206, 2017 WL 4273614, at *6 (D. Conn. Sept. 26, 2017) (dismissing deliberate indifference claim where the plaintiff "failed to allege facts indicating that [certain defendants] were personally involved . . . in his lack of medical treatment at the correctional facility"); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) (same, where defendant was not alleged to have "personally provided . . . [the] plaintiff with medical care").

Accordingly, Plaintiff's claims against Rubang are dismissed.

b. Claims against Wellpath

Plaintiff names Wellpath as a defendant as well as Rubang. (*See* Compl. 3.) "Generally, private entities are not subject to Section 1983," but a private entity's actions "are attributable to the state when there exists 'such a close nexus between the state and the challenged action that the state is responsible for the specific conduct of which the plaintiff complains.'" *Muniz v. Orange County*, No. 22-CV-529, 2024 WL 1142550, at *8 (S.D.N.Y. Mar. 14, 2024) (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)). The Second Circuit has explained that "[t]he actions of nominally private entities are attributable to the state when those actions meet one of three tests:" first, "the compulsion test," where "the entity acts pursuant to the coercive power of the state or is controlled by the state;" second, "the public function test," where "the entity has been delegated a public function by the state;" and third, "the joint action test or close

nexus test," where "the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies." *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (quotation marks and emphases omitted, alterations adopted); *see also Dorce v. City of New York*, 608 F. Supp. 3d 118, 138 (S.D.N.Y. 2022) (same) (citing *Fabrikant*, 691 F.3d at 207).

Reading the Complaint liberally, as it must, the Court understands Plaintiff as alleging Wellpath is the contractor providing medical services and employing the nurses at OCJ, because the Complaint gives Wellpath's "identifying information" as "[t]he medical [d]epartment of O.C.J.," and described the nurses as "nurses for Wellpath." (*See* Compl. 3.) Under the "public function" test, and drawing all inferences in Plaintiff's favor, Plaintiff has plausibly alleged Wellpath and its nurses are state actors for the purposes of § 1983, because "the provision of medical care to incarcerated prisoners is a public function, even if private [employees] contract with the government to provide those services." *Young v. Halle Housing Assocs., L.P.*, 152 F. Supp. 2d 355, 365 (S.D.N.Y. 2001); *see also Illescas v. Annucci*, No. 21-CV-8473, 2022 WL 17539696, at *3 (S.D.N.Y. Dec. 7, 2022) ("Courts have sometimes found non-public medical providers to be state actors when they provide medical care to inmates at a prison facility." (citing *West v. Atkins*, 487 U.S. 42, 50–51 (1988))); *Dubarry v. Annucci*, No. 21-CV-5487, 2022 WL 4485359, at *12 (S.D.N.Y. Sept. 27, 2022) (explaining that "courts have found . . . that a private entity that contracts with a correctional facility to provide medical care is a state actor for § 1983 purposes").

However, even if Wellpath is a state actor, the Complaint does not provide any factual allegations that would support holding Wellpath liable under § 1983. "Despite the fact that it is a private entity," Wellpath "enjoys the benefit of the *Monell* requirements for the same reason it

may be named as a defendant in a § 1983 suit," meaning that "to bring a § 1983 claim against" Wellpath, Plaintiff "must plausibly allege that the constitutional violations he alleges were caused by official policies or customs of" Wellpath. *Bess v. City of New York*, No. 11-CV-7604, 2013 WL 1164919, at *2 (S.D.N.Y. Mar. 19, 2013); *see also Williams v. Kepro*, No. 21-CV-302, 2023 WL 5806418, at *10 (N.D.N.Y. Aug. 8, 2023) (applying *Monell* to § 1983 claim against prison medical services contractor), *report and recommendation adopted*, 2023 WL 5806328 (N.D.N.Y. Sept. 7, 2023).

Plaintiff has not done so. Importantly, as explained above, Plaintiff has not stated a claim under § 1983 against Rubang, who is the only Wellpath employee named in the Complaint, which itself does not allege anything about Wellpath's conduct. (*See* Compl. 3.) Because Plaintiff's *Monell* claims against Wellpath are derivative of his claims against Rubang, and the claims against Rubang are dismissed, the *Monell* claims must be dismissed as well. *See McClanahan v. Kelly*, No. 12-CV-5326, 2014 WL 1317612, at *6 (S.D.N.Y. Mar. 31, 2014) ("[W]hen the claims against an individual defendant are dismissed, the claims against the City must also be dismissed, given that a [p]laintiff's *Monell* claims are derivative of his claims against the individual defendants." (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *Pinter v. City of New York*, 448 F. App'x 99, 106 (2d Cir. 2011) (summary order) (ruling that because the plaintiff's "*Monell* claims are derivative of his claims against the individual defendants . . . any claims dismissed as against the individual defendants must also be dismissed as against the [municipal defendant]"). Nor has Plaintiff alleged that the unnamed mental health workers who did not take him to the medical unit failed to do so pursuant to a custom or policy of Wellpath, and even assuming Plaintiff could state a claim against those workers, Wellpath is not liable for all the constitutional torts of its employees. *See Rojas v.*

*Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990) ("Private employers are not liable under § 1983 for the constitutional torts of their employees, unless the plaintiff proves that action pursuant to an official policy of some nature caused a constitutional tort." (citations and quotation marks omitted) (alterations adopted)); *Ruiz v. Parkchester Pub. Safety Dep't*, No. 23-CV-7423, 2023 WL 6977608, at *2 n.2 (S.D.N.Y. Oct. 20, 2023) (same).

Accordingly, the Court dismisses Plaintiff's claims against Wellpath.

III. Conclusion

For the foregoing reasons, the Court denies the County's Motion as to Plaintiff's punitive conditions of confinement claim against the four individual officers, and otherwise grants the County's Motion and Wellpath's Motions. Because this is the first adjudication of Plaintiff's claims on the merits, any claims dismissed herein are dismissed without prejudice. If Plaintiff wishes to file an amended complaint alleging additional facts and addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion and Order. Failure to properly and timely amend will likely result in dismissal of the claims against Defendants with prejudice. Any amendments to the Complaint should also reflect the information provided to Plaintiff by the County about the individual defendants. (*See* Letter from Stephanie T. Midler to Court (July 31, 2024).) The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 71, 72), and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: September 25, 2026
White Plains, New York

KENNETH M. KARAS
United States District Judge